UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| KELSEY NICOLE HEUSTIS, | Case No.: 3:19-cv-00259-REB |
| Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Respondent, | |

Before the Court is Petitioner Kelsey Nicole Heustis's Petition for Review, seeking review of the Social Security Administration's decision denying her application for Social Security Disability Insurance benefits and Supplemental Security Income for lack of disability. *See* Pet. for Review (Dkt. 2).  This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

### I. ADMINISTRATIVE PROCEEDINGS

On December 13, 2016, Petitioner Kelsey Nicole Heustis filed an application with the Social Security Administration for Social Security Disability Insurance benefits and Supplemental Security Income, alleging disability beginning March 13, 2015.  These claims were initially denied on February 22, 2017 and, again, on reconsideration on May 11, 2017.  On June 23, 2017, Petitioner timely filed a Request for Hearing.  On May 17, 2018, Administrative Law Judge ("ALJ") R.J. Payne held a hearing in Spokane, Washington, at which time Petitioner, represented by attorney Paul L. Clark, appeared and testified.  At the same hearing, Lowell L. Sparks, M.D., and William U. Weiss, Ph.D., appeared telephonically as impartial medical experts; Sharon F. Welter, an impartial vocational expert, also appeared and testified in person.

**MEMORANDUM DECISION AND ORDER - 1**

On July 26, 2018, the ALJ issued a Decision denying Petitioner's claims, finding that she was not disabled within the meaning of the Social Security Act. Petitioner timely requested review from the Appeals Council and, on May 31, 2019, the Appeals Council denied Petitioner's Request for Review, making final the ALJ's Decision.

Having exhausted her administrative remedies, Petitioner timely filed the instant action, arguing generally that "[t]he decision of the Commissioner is without foundation, not supported by substantial evidence, and is, in fact, contrary to the evidence presented," and also that "[t]he Commissioner erred in his failure to apply the appropriate standard of law." Pet. for Review, p. 3 (Dkt. 2). Specifically, Petitioner claims that "[t]he ALJ erred in evaluating opinion evidence contrary to the dictates of 20 C.F.R. §§ 404.1527 and 416.927 and Ninth Circuit precedent." Pet.'s Brief, p. 9 (Dkt. 14). Petitioner requests that the Court either reverse the ALJ's Decision and find that she is entitled to disability benefits or, alternatively, remand the case for further proceedings and award attorneys' fees. *See id*. at p. 16; *see also* Pet. for Review, p. 3 (Dkt. 2).

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. *See* 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. *See* 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support an ALJ's finding/conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health &*

**MEMORANDUM DECISION AND ORDER - 2**

*Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

As to questions of fact, the Court's role is to review the record as a whole to determine whether it contains evidence allowing a reasonable mind to accept the conclusions reached by the ALJ.  *See Richardson*, 402 U.S. at 401.  The ALJ is responsible for determining credibility and resolving conflicts within the medical testimony  (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving any ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence contained in the record (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).  Where the evidence is susceptible to more than one rational interpretation, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *See Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

As to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error.  *See Matney*, 981 F.2d at 1019.  At the same time, the ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law.  *See id.*  However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *See Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III.  DISCUSSION

**A.     Sequential Process**

Evaluating evidence presented at an administrative hearing, the ALJ must follow a five-step sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§

**MEMORANDUM DECISION AND ORDER - 3**

404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act. *See Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983).

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). *See* 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. *See* 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. *See* 20 C.F.R. § 404.1572(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner "has not engaged in substantial gainful activity since March 13, 2015, the alleged onset date." (AR 17).

The second step requires a determination of whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. *See* 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is "severe" if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. *See* 20 C.F.R. § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28, and 16-3p. If there is no severe medically determinable impairment or combination of impairments, benefits are denied. Here, the ALJ found that Petitioner has the following severe impairments: "bipolar I disorder with psychotic features; anxiety disorder; schizotypal personality disorder; methamphetamine use disorder; cannabis use disorder; obesity." (AR 18).

**MEMORANDUM DECISION AND ORDER - 4**

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. *See* 20 C.F.R. § 404.1509. If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. *See* (AR 22-24).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. *See* 20 C.F.R. § 404.1520(e). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making this finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. *See* 20 C.F.R. § 404.1520(e), 404.1545; *see also* SSR 96-8p. On this point, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can lift/carry no more than 50 pounds occasionally and 25 pounds frequently, sit six hours in an eight-hour workday, and stand and walk six hours total, in any combination, in an eight-hour workday with normal breaks. The claimant is limited to frequent stooping, crouching, kneeling, crawling, and climbing of ramps and stairs; no climbing of ladders, ropes or scaffolds; no balancing; no working in marked temperature extremes (heat, cold); no unprotected heights or hazardous machinery. The claimant can understand, remember and carry out simple, routine and/or repetitive work instructions and work tasks; can have occasional contact with the public; can work with, or in the vicinity of, coworkers but not in a teamwork-type work setting; can handle normal supervision (i.e., no over-the-shoulder or confrontational type of supervision); would do best in a routine work setting with little or no changes; no fast paced or strict production quota type work; no independent decision-making or making decisions for others; low stress work defined

**MEMORANDUM DECISION AND ORDER - 5**

as no managerial work and no more than making simple workplace judgments; no working involving large crowds (e.g.,, 30 people or more in a small room, or large festival or sporting event crowds).

(AR 24).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  *See* 20 C.F.R. §§ 404.1512(f), 404.1560(c); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  Here, the ALJ found that Petitioner "is capable of performing past relevant work as a kitchen helper, cook helper and cleaner, housekeeping [because] [t]his work does not require the performance of work-related activities precluded by the claimant's [RFC]."  (AR 30).  Alternatively, considering Petitioner's age, education, work experience, and RFC, the ALJ concluded that there are other jobs that exist in the significant numbers in the national economy that she can also perform, including fish cleaner, price marker, and foam rubber fabricator.  *See* (AR 31-32).  Therefore, the ALJ concluded that Petitioner "has not been under a disability, as defined in the Social Security Act, from March 13, 2015, though the date of this decision."  (AR 32).

**B.     Analysis**

The ALJ is responsible for resolving ambiguities and conflicts in the medical record.  *See Magallanes*, 881 F.2d at 750.  The ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."  *Chaudhry v.*

**MEMORANDUM DECISION AND ORDER - 6**

*Astrue*, 688 F.3d 661, 671 (9th Cir. 2012).  Additionally, the ALJ may discount physicians' opinions based on internal inconsistencies, inconsistencies between their opinions and other evidence in the record, or other factors the ALJ deems material to resolving ambiguities.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).  Finally, an ALJ is not bound to a physician's opinion of a claimant's physical condition or the ultimate issue of disability.  *Magallanes*, 881 F.2d at 751.

If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities.  *See id.*; *see also Bayliss*, 427 F.3d 1211; *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999). An ALJ also may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been properly discounted as not credible.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Here, Petitioner argues that the ALJ failed to properly evaluate the opinions of Drs. Rebecca Alexander and William Weiss.  *See* Pet.'s Brief, p. 10 (Dkt. 14) ("Two acceptable medical sources offered opinions as to Petitioner's psychological limitations, Dr. Alexander the consultative examiner, and Dr. Weiss, medical expert who testified at the hearing.  The ALJ failed to consider all the factors in § 404.1527(c) in evaluating their opinions.").  Their medical opinions, and the ALJ's consideration of the same, are addressed in turn below.

      1.     <u>Dr. Alexander</u>

Dr. Alexander examined Petitioner on February 4, 2016 and, later, on February 16, 2017. Based on psychological/cognitive functioning, Dr. Alexander opined following the first

**MEMORANDUM DECISION AND ORDER - 7**

examination that (1) Petitioner's "ability to understand and remember information is mildly impaired"; (2) Petitioner's "[a]bility to sustain concentration and persist is moderately affected by mood instability/depression and possibly periods of methamphetamine and marijuana use"; and (3) Petitioner's "[a]bility to interact appropriately in the workplace, attend consistently and be timely and punctual, and respond to clients and employers is moderately to markedly impaired by Schizotypal traits, mood lability, and drug abuse." (AR 569).

The ALJ gave this opinion "some" weight "because it is based on a thorough examination and interview." (AR 28). However, according to the ALJ, that weight is limited "because issues like sustainability/consistency over time are difficult to assess in a one-time examination, and Dr. Alexander's opinion on these matters is inconsistent with records showing significant improvement with medication." *Id*. Petitioner contends that the ALJ erred in limiting the weight given to Dr. Alexander's February 2016 opinions. *See* Pet.'s Brief, p. 11 (Dkt. 14) ("The ALJ's reasons for finding the opinion merited little weight on the factors there were considered are insufficient."). The undersigned is not persuaded.

To begin, Dr. Alexander's opinions concerning Petitioner's mental limitations are incomplete and/or inconsistent with the balance of the medical record, to the extent they do not consider Petitioner's improvements/stabilization while on medication. Treatment notes from Roye Ely, FNP, for example, show:

- As of 12/15/16: "Kelsey feels that her symptoms which are paranoia and delusions, are much better. She no longer thinks people are talking about her and the TV and radio are no longer talking to her. . . . No active hallucinations and she is much less stressed than at previous visits." (AR 605).

- As of 1/26/17: "Kelsey has been on the Invega for several months now and, by report of her staff, she is much better." (AR 636).

- As of 5/25/17: "She assures me that she could handle pills at this time, is ready to admit that she has a mental illness and that she needs treatment. Admits that she is thinking more clearly since going on meds. (AR 671).

**MEMORANDUM DECISION AND ORDER - 8**

- As of 6/29/17: "Much improved. She is calm, speaking easily, much more willing to discuss her symptoms objectively. . . . Kelsey is as lucid as I have ever seen her." (AR 670).

- As of 7/27/17: "Kelsey is still much better than at initial visits. No delusions but voices are still present at a 3 or 4 on a 1-10 scale. . . . Kelsey assures me that she is 100% med compliant, has not missed a dose, but took it late a couple of times. Also complains that she is more irritable. Overall, however, she can see that she is much improved." (AR 669).

- As of 10/12/17: "Kelsey continues to be much improved over her presenting state and is capable of doing some kind of simple work and get along with others which definitely was not true initially. I continue to urge her to get more exercise and try to get into town where she could have more social contact and more job opportunities." (AR 667).

This disconnect presumably stems, at least in part, from the fact that Dr. Alexander's above-referenced opinions predated Petitioner's improved mental state following treatment. *See* (AR 569) (Dr. Alexander's noting Petitioner's prognosis as "guarded given poor work history *and no psychotropic medications to treat psychological diagnoses*.") (emphasis added); *see also* Pet.'s Brief, p. 11 (Dkt. 14) ("The inconsistent records were created after Dr. Alexander's exam and report; Dr. Alexander did not review them. . . . This statement leaves open the possibility that medication would be useful; Dr. Alexander's conclusions about limitations are not inconsistent with eventual improvement with medication."). Regardless, these opinions exist in isolation at that moment in time, and do not – indeed could not – accurately reflect Petitioner's evolving and improving condition with the benefit of medication. The ALJ's recognition of this reality was not improper.

Following the second examination, Dr. Alexander similarly opined that Petitioner's (1) "[a]bility to understand simple and complex instructions does not seem impaired," but that "during periods of severe mania and depression, her ability to remember instructions and sustain concentration and persist is significantly impaired"; and (2) "[a]bility to interact appropriately in

**MEMORANDUM DECISION AND ORDER - 9**

workplace, exercise good judgment, interpret others' intentions, and respond to stress and clients is markedly impaired by mood, lability, paranoia, Schizotypal personality traits, and social anxiety." (AR 611).

The ALJ gave this opinion "little to some weight," again pointing to Petitioner's encouraging response to medication and overall progress since the first examination, as well as contradictory evidence elsewhere in the medical record. (AR 29). Petitioner challenges these assessments, renewing her argument that the ALJ failed to provide specific and legitimate reasons for discounting Dr. Alexander's opinions. The undersigned remains unpersuaded.

To continue, despite the second examination occurring nearly a year after the initial exam, Dr. Alexander's opinion was largely unchanged from the first examination and was tethered to the fact of Petitioner's psychological impairments, not to Petitioner's condition when such impairments were treated with medication. But, as before, Petitioner's condition had indisputably improved with the benefit of medication, to the point that Petitioner told Dr. Alexander during the second examination in February of 2017 that she had not had any periods of severe mania since starting medication in October/November 2016. *See* (AR 609, 611); *see also supra* (discussing Petitioner's improvement while on medication following first examination with Dr. Alexander). Yet, Dr. Alexander seemingly presumed the existence of such manic episodes when discussing Petitioner's limitations. At best this is unnecessary; at worst, it ignores Petitioner's true condition, especially when also considering the improved mental status finding during Petitioner's second examination with Dr. Alexander. *Compare generally* (AR 564-69), *with* (AR 606-11) (following second examination, Dr. Alexander noting: "There did not appear to be a comprehension deficit as in understanding oral instructions, completing single and multistage commands, i.e., complete office forms"; "Ms. Heustis reports, for the most part, she interacted really well with past employers and clients but there were 'off days.' She has friends

**MEMORANDUM DECISION AND ORDER - 10**

with whom she visits maybe once a week and good friends from high school who she visits once every two months"; "Ms. Heustis reports depressive episodes last half a day" (as compared to lasting "for a few months" as reported in first examination); "[m]ania lasts a couple of hours and occurs three times a week[, but] [i]n the past, mania lasted sometimes for days"; and "she thinks the medication is helping but it doesn't completely alleviate symptoms.").

Moreover, Dr. Alexander's opinions are contradicted. For example, the ALJ pointed to separate opinions from state agency reviewing medical consultants, who said that although Petitioner does have medically-determinable mental health impairments, she is not disabled. *See* (AR 28) (citing (AR 84-95, 97-109, 111-23, 125-37, 139-55, 157-73)). Therefore, the ALJ is required to have specific and legitimate reasons for challenging Dr. Alexander's opinions, but no more than that. *See Moore v. Comm'r of Soc. Sec. Admin.*, 279 F.3d 920, 924 (9th Cir. 2002) ("The ALJ could reject the opinions of Moore's examining physicians, contradicted by non-examining physician, only for 'specific and legitimate reasons that are supported by substantial evidence in the record.'") (quoting *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). The ALJ met this standard.

From all of this, it is clear that Petitioner suffers from several impairments (acknowledged as "severe" by the ALJ (*see* (AR 18)) that impact her ability to work. However, the ALJ provided specific legitimate reasons for rejecting or questioning certain of Dr. Alexander's opinions. Petitioner argues that those opinions were not given the weight they deserved, but such opinions were considered in the context of the surrounding medical record. This Court's role is not to resolve the conflicting evidence and ultimately decide whether Petitioner is once-and-for-all disabled as that term is used within the Social Security regulations. Rather, this Court must decide whether the ALJ's decision is supported by the record. This record informs and supports the ALJ's decisions on how to consider the various opinions,

**MEMORANDUM DECISION AND ORDER - 11**

including those of Dr. Alexander. The ALJ decided to discount certain opinions while crediting others. He supports his decision by clear and convincing, specific, and legitimate reasons. Hence, because the evidence can reasonably support the ALJ's conclusions in these respects, this Court will not substitute its judgment for that of the ALJ's even if this Court were to have a different view. *See Richardson*, 402 U.S. at 401; *Matney*, 981 F.2d at 1019.

   2.   Dr. Weiss

During the May 17, 2018 hearing, Dr. Weiss indicated that Petitioner's limitations would actually be worse *absent substance abuse* (beginning in March 2016),[1] testifying in response to questions from the ALJ and Petitioner's attorney as follows:

ALJ:   All right. Would there be then a period of time where you would be rating the B criteria with the DAA [(drug addiction and alcoholism)], and without DAA?

A:   I think, you know, we could rate it without these – without drug and alcohol, particularly for the period – if we – the period could be March 2016, and you know, we could rate it for the period from March 2016 forward. I think that would be appropriate.

ALJ:   Okay.

A:   I think at that point, there was . . . according to the record anyway, no use of methamphetamine.

ALJ:   And then with DAA, would be 3/15 – 3/13/15, the alleged onset date, to say March 1, 2016?

A:   Yes, I think that would be appropriate. Of course, methamphetamine is a powerful drug and can precipitate psychosis. It's difficult before March 2016, to disentangle those. But I think if we move forward from an onset date of March 2016, forward, we can do it without the – without methamphetamine being an issue.

ALJ:   Okay. Well, I'm going – I want to get it both ways, so two periods of time.

---

[1] Dr. Weiss concluded that, for the purposes of addressing Petitioner's application, she used methamphetamine from the March 13, 2015 onset date until she reported to Dr. Alexander at the second examination in February 2017 that she last used methamphetamine in March 2016. *See* (AR 56) (referring to (AR 608)).

**MEMORANDUM DECISION AND ORDER - 12**

A:   Okay.

ALJ: Let's go with the . . . DAA first, and then we'll go without DAA?

. . . .

ALJ: How could it be without DAA, how could [interacting with others] be marked, and with DAA be moderate? Explain that to me.

A:   Okay. It's – interact with others is marked.

ALJ: No. Tell me how – with DAA, it can be moderate, without DAA, it's marked?

A:   That's because the – what we can see – we see that without the DAA, we actually see the entire psychopathological picture. It was difficult to disentangle those when we were doing it with the DAA. But if we disentangle those which we have since the – let's see, March 2016, I think we are seeking a more severe form of the disorder that she has.

ALJ: Okay. So yeah, this is very unusual. This is the first time I've ever had a medical expert testify that the ratings without DAA would be greater than with DAA. So that's where I'm having a little problem but fine. If that's your stance on it, that's fine.

A:   Yeah, that's my stand on it, yes. . . . .

ALJ: Okay. So actually beginning March 1, 2016, you feel that she meets [Listing] 1203 –

A:   Meets a Listing.

ALJ: -- 04, and 06, in combination?

A:   Yeah, those two in combination. The reason this is happening is that it's difficult to disentangle the methamphetamine from the psychotic disorder that we have. But I think it's clear when the methamphetamine is removed, so – and in other words what I'm saying is that we can actually see the disorder after the methamphetamine is removed. That's why I'm testifying this way.

ALJ: Okay. And that would be as of March 1, 2016?

A:   That is correct.

**MEMORANDUM DECISION AND ORDER - 13**

> ALJ: All right. So we've got the – no Listing's been met or equaled with DAA, so we'll need an RFC to cover that period of time, a mental RFC? We'll – let's do a narrative mental RFC? Let's try to put it in vocational terms as best we can as we go along, okay?
>
> A: Okay. Now what do you want me to do? I'm sorry.
>
> ALJ: We've got a period of time from the alleged onset date to March 1, 2016, where no Listing's been met or equaled. Therefore, we will need to have some . . . a mental RFC?
>
> . . . .
>
> ATT: Well, Doctor, for this period March '15, March '16, when she was using meth, if we – so is your testimony that you can't imagine what her limitations would be if the drugs were removed during that time? I know it's a counterfactual but wouldn't they be similar to what they were after she stopped using meth? Isn't that the baseline?
>
> A: What – I guess what I'm saying on that is that it's difficult to say just exactly what – how the methamphetamine affects her ability to work. Often it precipitates psychotic episodes, for example. What we can do is say exactly what the impact of the meth was, but once she stopped the meth, I think we can see the full spectrum of her disorders. I think that's the way I would put it. That would be after March 2016.

(AR 55-56, 58-61, 63).

In a nutshell, Dr. Weiss testified that, (1) when Petitioner used methamphetamine (before March 2016), she did not meet a Listing at step three of the sequential process; but that (2) when Petitioner stopped using methamphetamine (after March 2016), she then met certain Listings. The ALJ considered that opinion, but found it was entitled to "little weight" as counterintuitive and not supported by the record in any event. *See* (AR 29) ("In the undersigned's 24 years of experience as an [ALJ], the undersigned has never had a medical expert testify that the claimant's limitations would actually be worse absent substance use. Dr. Weiss's explanation for this did not make sense, nor is it supported by the record."). The Court agrees.

**MEMORANDUM DECISION AND ORDER - 14**

The ALJ highlighted how the medical record does not align with Dr. Weiss's position, even leaving aside the apparent seldom-encountered nature of his opinion. In November 2016,[2] Petitioner presented with psychotic symptoms, elevated mood, and impaired functioning – caused by her methamphetamine use. *See* (AR 590, 592) ("Today, Kelsey is manic with elevated mood, laughing constantly, paranoid, having ideas of reference about her living situation and the government, religiosity, and lacks insight into her symptoms. . . . . Kelsey's mania can become triggered by meth use, as appeared to have happened on this occasion."). According to the ALJ, "this report contains the most significant abnormalities in the entire record and claimant's symptoms appeared to be triggered by her meth use, which is inconsistent with Dr. Weiss's opinion of worsening absent meth." (AR 30) (citing (AR 590-92)). In other words, the record indicates that Petitioner's methamphetamine use made her mental impairments worse, not better. *See also* (AR 566, 608) (Dr. Alexander observing that Petitioner's previous methamphetamine use affected finances, relationships, mental health, work, and legal status).

Correspondingly, as discussed above, Petitioner's symptoms improved as of November 2016 when she stopped taking methamphetamine and sought treatment. *See supra*; *see also* (AR 30) (ALJ stating: "Dr. Weiss's opinion is also inconsistent with records from November 2016 forward, which clearly show that, since attaining sobriety and starting medications, the claimant has experienced significant improvement in her symptoms. The claimant, herself, has also reported a significant improvement with medication and sobriety, which, again, is inconsistent with Dr. Weiss's opinion.") (internal citations omitted). This circumstance likewise coincides

---

[2] This would indicate that, contrary to Dr. Weiss's assumption during the May 17, 2018 hearing (*see supra*), Petitioner did not stop using methamphetamine in March 2016 (as evidenced by the November 2016 treatment note), in turn calling into question the accuracy of Dr. Weiss's "entire psychopathological picture" from which he premises his opinion.

**MEMORANDUM DECISION AND ORDER - 15**

with the state agency medical consultants' conclusions that Petitioner, though suffering from various impairments, is not disabled, further contradicting Dr. Weiss's opinion. *See supra*.

Dr. Weiss's opinion is contradicted. Therefore, the ALJ need only present specific and legitimate reasons for rejecting it, supported by substantial evidence. In questioning the foundation of Dr. Weiss's opinion to begin with and, later, discussing inconsistencies between it and the rest of the record, the ALJ did just that. The ALJ's discounting of Dr. Weiss's opinion is properly supported as a matter of law.

## IV.  CONCLUSION

The ALJ, as fact-finder, must weigh the evidence, draw inferences from facts, and determine credibility. *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the Court may not substitute its interpretation for that of the ALJ. *Key*, 754 F.2d at 1549. The ALJ has provided reasonable and rational support for his well-formed conclusions, even if such evidence is susceptible to a different interpretation. Accordingly, the ALJ's decisions as to Petitioner's disability claim were based on proper legal standards and supported by substantial evidence. Therefore, the Commissioner's decision that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

The Commissioner's decision is affirmed.

///

///

///

///

///

**MEMORANDUM DECISION AND ORDER - 16**

## V. **ORDER**

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this action is DISMISSED in its entirety, with prejudice.

DATED: September 30, 2020

Ronald E. Bush
Chief U.S. Magistrate Judge